

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

*GC 12/11/2017*

Elijah Brown

_____
Plaintiff

vs.                                                            Case Number  **2017 CA 007903 B**

United Planning Organization

_____
Defendant

### SUMMONS

To the above named Defendant: Dana M. Jones, President & CEO of United Planning Organization. 301 Rhode Island. NW. D.C. 20001

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

A.J Dhali. Dhali PLLC
_____
Name of Plaintiff's Attorney
1828 L. Street. NW. Suite 600

_____
Address Washington D.C 20036

_____
202-556-1285; E:ajdhali@dhalilaw.com
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____ **11/29/2017**

如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ።

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

ELIJAH BROWN
    Vs.
                                    C.A. No.     2017 CA 007903 B
UNITED PLANNING ORGANIZATION

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                         Chief Judge Robert E. Morin

Case Assigned to: Judge MICHAEL L RANKIN
Date:  November 28, 2017
Initial Conference: 10:30 am, Friday, February 23, 2018
Location: Courtroom 517
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

                                                           CAIO-60

Filed
D.C. Superior Court
11/29/2017 23:34PM
Clerk of the Court

## IN THE SUPERIOR COURT FOR
## THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

|  |  |
|---|---|
| Elijah Brown<br>2824 Myrtle Avenue. NE<br>Washington D.C. 20018<br>    Plaintiff,<br><br>vs.<br><br>United Planning Organization<br>301 Rhode Island, Ave. NW<br>Washington D.C. 20001<br>    Defendant. | )<br>)<br>)<br>) Case No: **2017 CA 007903 B**<br>)<br>)<br>) **Jury Demand**<br>) For Violations of (i) the D.C. Family Medical<br>) Leave Act; (ii) D.C. Human Rights Act; (iii)<br>D.C. Wage Payment Collection Law; (iv)<br>Family Medical Leave Act; (v) COBRA & (vi)<br>Breach of Contract |

### Introduction

Elijah Brown by and through his undersigned counsel Dhali PLLC, file this Complaint

for violations of the District of Columbia and Federal Family Medical Leave Act (FMLA) and

the D.C. Human Rights Act (DCHRA), when the Defendant, United Planning Organization

(UPO) terminated Brown on November 28, 2016 while he was on medical and/or disability

leave.

Brown also brings a claim for unpaid overtime wages for work performed in 2016 under

the D.C Wage Payment Collection Law (DCWPCL).  Plaintiff also alleges that UPO breached

their contract for wages owed to him.

Finally, because UPO also did not issue timely notice for continued health coverage until

August 2017 to Brown, he also brings claims for violations of the Consolidated Omnibus Budget

Reconciliation Act (COBRA) under 29 U.S.C § 1166(4)  and 29 U.S.C § 1132(c)(1) for

monetary penalties[1] against the Defendant.

## Part I. Parties

1. Plaintiff Elijah Brown was an employee of the Defendant, United Planning
   Organization (UPO) from September 2009 until he received his termination letter on
   November 28, 2016. At the time of his termination he was employed as a Quality
   Control Inspector earning approximately $60,000 per year. Brown is an employee
   under: D.C. Code § 2-1401.02 (9) of the DCHRA; D.C. Code § 32-501(1) of the
   DCFMLA; § 32-1301(2) of the DCWPCL; 29 U.S.C § 2611 *et.seq.*, of the FMLA,
   and a "participant" under 29 U.S.C. §1002(7) for actions under COBRA.

2. The United Planning Organization is a non-profit social services organization based
   in Washington D.C. Its mission is to plan, coordinate, and implement human
   services programs for low-income residents in the Nation's Capital.[2] UPO is an
   employer under: § 2-1401-01 *et.seq*, of the DCHRA; D.C. Code § 32-501(2) of the
   DCFMLA; D.C. Code §32-1002 (2) of the DCWPCL; 29 U.S.C. § 2611 *et.seq.*, of
   the FMLA and 29 U.S.C. §1002(5) for actions under COBRA.

## Part II. Exhaustion of Administrative Remedies

3. There are no administrative exhaustion requirements for actions under the DCHRA,
   the DCFMLA, the DCWPCL, FMLA and COBRA.

---

[1] Plaintiff may also have claims under the D.C. Whistleblower Protection Act (WPA) and/or the False Claims Act (FCA). Counsel is still exploring these matters with the client. To that end, Defendant's are being placed on notice of these claims and that Plaintiff reserves the right to amend this complaint to bring further actions under either the WPA or the FCA.

[2] Addition information on the UPO can be viewed on their website www.upo.org.

### Part III. Jurisdiction & Venue

4.  This Court has jurisdiction over his DCHRA claims under D.C. Code Ann. § 11-921;

    his DCFMLA claims under D.C. Code § 32-510; and his state law wage claims

    under D.C. Code Ann. § 32-1308 of the DCWPCL. This Court has jurisdiction over

    his federal FMLA claims under 29 U.S.C. § 2611. *et.seq.,* and concurrent

    jurisdiction over his COBRA claims under 29 U.S.C. §1132(e)(1) for actions

    brought under 29 U.S.C. §1132(a)(1)(B)

5.  Venue is also proper in the District of Columbia, because Brown is a resident of

    Washington D.C., and was also terminated and hired in Washington D.C. UPO too is

    a business organization based in Washington D.C and all the records for Brown's

    hire, unpaid and overtime wages, termination and health plan are also located in the

    District of Columbia.

### Part IV. Statement of Facts

6.  In September 2009, Brown began his employment with the United Planning

    Organization (UPO) as an instructional specialist, earning approximately $54,000

    per year.

7.  Sometime in 2012, Brown had an employer write up, not related to his termination in

    2016.

8.  Brown continued to excel in his employment. Brown also never received any other

    write up from 2013-September 2016.

9.  Brown also never received his 2015 performance evaluation.

10. Being good at his job, on or about October 1, 2016, Brown was promoted to the

    "Quality Control (QCI) Inspector."  He was now earning $60,000 per year.

11. Somewhat unexpectedly on Friday October 21, 2016, around 5:15 pm Brown was then placed on a Performance Improvement Plan (PIP) by Valarie Hunt, Interim Director and Dianna Guinyard, VP and Chief Operating Officer (COO).

12. Among other things, Hunt and Guinyard in the PIP alleged that Brown on 9/8/2016 did not install exhaust fans in the homes of certain residents. Brown contends that all inspections on this issue was done on time, and if there were any installation issues, it was because the supplies from a third party, were not forthcoming.

13. Hunt and Guinyard also wrote Brown for the 9/13/2016 incidents for not following up with other residents. Brown contends that follow up work had occurred and the home crews were assigned with building tasks, and if there was a delay, it was because third party sub-contractors delayed the job.

14. On Monday October 24, 2016, Brown telephones his union, the Communication Workers of American (CWA) for assistance with the PIP.

15. Brown continues to report to work until November 2, 2016.

16. On November 3, 2016, Brown visits his primary care physician (PCP) at Kaiser Permanente (KP) for anxiety and depression. His mental disabilities made it difficult for Brown to concentrate at work, speak and communicate with colleagues.  His PCP refers him to KP's "Mental Behavioral/Mental Health" unit for a follow up appointment.

17. His physician also places Brown on four (4) days of medical leave.

18. On November 9, 2016, Brown visits KP and the Mental Health unit for a follow up appointment.

19. Warren Miller - Licensed Clinical Social Worker (LCSW) places Brown on medical leave from 11/3/2016 – 12/01/2016. In Miller's medical note, it says that, "Mr. Brown will be participating in the intensive outpatient program and will be reassessed on 12/01/2016."

20. On this same day, Brown emails Rosalind Pinkney, VP of Human Resources at UPO and informs her of the above and also requests FMLA leave, and an FMLA application and form for completion.

21. On November 10, 2016, Pinkney in an email sent at 5:10 pm to Brown, acknowledges the email sent to her, and Brown's request for FMLA leave.

22. Brown is on medical leave from 11/3-2016 – 12/1-2016.

23. Aside from the November 10, 2016, email sent by Pickney no other email or communications from UPO is received by Brown. UPO also failed to send Brown his request to complete an FMLA application.

24. On November 28, 2016, Brown calls VP Pinkney and enquires about his pay check for the pay period 11/6/2016 – 11/19/2016. He informs Pinkney that he never received his bi-monthly salary.

25. On November 28, 2016, Pinkney sends Brown an email with an attachment and termination letter dated November 10, 2016, informing him that he had been terminated.

26. The 11/10/2016 termination letter is sent to an incorrect and unknown mailing address: 5722 3rd Place. NW. Washington D.C 20011.

27. Brown has never resided at this address.

28. On November 28, 2016, Brown for the first time learned that he has been terminated and that his termination was for "unsatisfactory work performance for which you were issued a [PIP] on October 21, 2016."

29. This termination letter also referenced his failure to report sick leave for November 7, 2016, through November 9, 2016. "This was also part of your PIP."

30. Nowhere in the November 21, 2016, PIP does it reference this November 2016 failure to report sick leave.

31. UPO also has a progressive discipline policy.

32. In terminating Brown on November 28, 2016, UPO failed to apply their progressive discipline policy towards him.

33. On November 29, 2016, Brown calls his union steward Anthony Ross of the CWA, and on this day, for the first time, informs Ross that he has been terminated. Brown seeks union representation and assistance with filing a grievance, to challenge his termination.

34. Ross informs Brown that he is not a union member and there is nothing he or the CWA can do for him. Brown references the termination letter, which states his right to union representation. Ross tells Brown, "that is just generic boiler-plate language that UPO uses for everyone. You are not a member of the union."

35. Brown calls UPO who again inform him to call CWA for assistance and that Brown is a member of the union.

36. Sometime on December 10, 2016 or December 15, 2016, CWA finally agrees to represent Brown in his grievance and termination from UPO.

37. For reasons that are not clear, the union statement of occurrence states a termination or occurrence date of November 20, 2016.

38. Brown however was not told of his termination until November 28, 2016 by the VP of HR Pinkney. His termination letter too is dated November 10, 2016.

39. Brown has no idea what the November 20, 2016 date references.

40. As of the date of this filing, he is scheduled for a grievance, at the second step of a three step process, between CWA and UPO.

**COBRA Claims**

41. At the time of Brown's termination on November 28, 2016, Brown was also an eligible employee for UPO sponsored health insurance.

42. UPO's health insurance plan is covered by the Consolidated Omnibus Budget Reconciliation Act (COBRA).

43. To that end, from 2008 to November 20, 2016, he continued to receive health insurance from UPO. He also used his employer sponsored health insurance to seek medical treatment on 11/3/2016 and 11/9/2016 with Kaiser Permanente.

44. Kaiser then cancelled his medical insurance on November 20, 2016.

45. In his November 10, 2016 termination letter UPO too advised him of his continued coverage under COBRA and that he was "therefore eligible for COBRA, which allows you to continue your health, dental and vision coverage for upto 18 months at your expense. You will be contacted by ADP (our COBRA carrier) regarding continuation of coverage."

46. No such communication from either UPO, ADP, or any other third party administrator, was sent to Brown or his spouse until he received a letter and

"Election Notice" for continued medical coverage, from Wage Works Inc., dated August 3, 2017.

47. From November 20, 2016 – August 2017, Brown and his spouse was without medical insurance resulting in the loss of medical services to Brown and his spouse. To that end, Brown could no longer seek medical treatment for his illness, anxiety and depression for the periods November 28, 2016 – August 2017.

48. Brown was scheduled for Follow-up Evaluation on December 1, 2016 and January 25, 2017. Brown was not able to keep these medical appointments because of lack of medical insurance. Brown was in deep despair because he wasn't able to get medical help for his severe depression, anxiety, and sleep deprivation.

**DCWPCL & Breach of Contract Wage Claims**

49. Finally, Brown also alleges that because he has historically been paid overtime for work performed from 2008-2015, he is owed unpaid overtime wages in the approximate amount of $30,000 - $40,000 for work performed in 2016. As of the date of the filing of this complaint, Brown has not been paid his overtime by UPO.

50. Considering these 2016 overtime wages is for work already performed by Brown, UPO has no good faith basis to deny him his wages due.

**Part V. Causes of Action**
**Count I. Disability Discrimination under the DCHRA**

51. Plaintiff reincorporates by reference all the allegations above.

52. At all times Defendant was an employer of the Plaintiff and subject to the provisions of the D.C. Human Rights Act § 2-1401 *et seq* (DCHRA), of the District of Columbia Code.

53. At all pertinent times, Plaintiff was entitled to protections under the DCHRA.

54. The DCHRA prohibits discrimination in employment "for any reason other than individual merit" including without limitation on the basis of disability.

55. In order to make a prima facie case of discrimination under the DCHRA, plaintiff must be (i) a member of a protected class; (ii) suffer an adverse employment action and (iii) there are circumstances that give rise to an inference of discrimination. *See Little v. D.C Water and Sewer Authority,* 91 A.3d 1020, 1028 (D.C 2014)

56. In the present instance, Plaintiff alleges that Defendant and/or its agents or its employees acting on its behalf discriminated against the Plaintiff on the basis of his disability (anxiety and depression) by treating him differently and less preferably than, similarly situated non-disabled employees or those outside of Plaintiff's protected class, in violation of the DCHRA when they terminated him on November 28, 2016.

57. Defendant knew or should have known of the type of discrimination that Plaintiff suffered.

58. Defendant's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

59. Defendant's acts of discrimination caused Plaintiff to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

60. This intentional, reckless and/or willful discrimination on the part of Defendant's constitutes a violation of Plaintiff's rights under the DCHRA.

61. By reasons of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies under the DCHRA including his attorney's fees.

## Count II. Retaliation under the DCHRA

62. Plaintiff reincorporates by reference all the allegations above.

63. At all pertinent times Defendant was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et.seq* of the District of Colombia Code. (DCHRA)

64. At all pertinent times, Plaintiff was entitled to protections under the DCHRA.

65. The DCHRA makes it an "unlawful discriminatory practice to coerce, threaten, retaliate against or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided and encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter." D.C. Code § 2-1402.61.

66. Plaintiff engaged in protected activity and opposition to practices made unlawful under the DCHRA while employed by the Defendant, when he requested disability and medical leave on 11/9/2016, only to have UPO draft a termination letter 24 hours later, dated 11/10/2016. Plaintiff first became aware of this letter and his termination on November 28, 2016.

67. As a result of his protected activities and opposition to practices made unlawful under the DCHRA, Plaintiff was subjected to adverse employment actions, including termination that may well dissuade an employee from filing a claim of discrimination.

68. A casual connection exists between Plaintiff's protected activities and the adverse employment actions taken by the Defendant. *See Nicola v. Washington Times Corp.,*

947 A.2d 1164, 1175 (D.C. 2008) (quoting *McFarland v. George Washington Univ.*, 935 A.2d 337, 356 (D.C. 2007)).

69. Defendant's acts of retaliation caused Plaintiff to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

70. This intentional, reckless, and/or willful retaliation by the part of Defendant constitutes a violation of Plaintiff's statutory rights under the DCHRA.

71.  By reason of Defendant's retaliation, Plaintiff is entitled to all legal and equitable remedies under the DCHRA, including his attorney's fees.

## Count III. Interference Under the DCFMLA

72. Plaintiff reincorporates by reference all the allegations above.

73. The D.C Family Medical Leave Act (DCFMLA) provides an eligible employee for a total of sixteen (16) workweeks of medical leave during any twenty-four (24) month period when the employee becomes unable to perform the functions of his job. An employee may bring a claim under the DCFMLA when he has suffered damages as a result of the denial. *See* D.C. Code § 32-501 et. seq.

74. In order to prevail in his FMLA claim, Plaintiff must show that the employer "interfere[d] with, restrain[ed], or den[ied] the exercise of or the attempt to exercise, any right provided" by the FMLA, 29 U.S.C. § 2615(a)(1), and that he was prejudiced thereby. *See McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 391 U.S. App. D.C. 371, 377, 611 F.3d 1, 7 (2010) citing to *Ragsdale v. Wolverine Worldwide, Inc.*, 535 U.S. 81, 89 (2002); *see also Gordon v. United States Capitol Police*, 778 F.3d 158, 165 (2015) ("[W]e hold that an employer action with a reasonable tendency to "interfere with, restrain, or deny" the "exercise of or attempt

to exercise" an FMLA right may give rise to a valid interference claim under § 2615(a)(1) even where the action fails to actually prevent such exercise or attempt.")

75. The Plaintiff "can succeed on [his] claim under the FMLA <u>without</u> showing [Defendant] denied [him] any leave [he] requested. [He] need only show the employer "interfere[d] with ... the exercise of" [his] FMLA rights, 29 U.S.C. § 2615(a)(1), and that [he] suffered "monetary losses ... as a direct result of the violation [...]"" *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 391 U.S. App. D.C. 371, 377, 611 F.3d 1, 7 (2010) (emphasis added).

76. Plaintiff had a serious health condition of anxiety and depression which made him unable to perform his job. He was also seeing a medical provider for treatment in 2016. Plaintiff provided his employer with notice to take leave on 11/9/2016 only for them to deny him this leave and terminate him 24 hours later on 11/10/2016. Plaintiff learns of his termination for the first time on 11/28/2016.

77. This intentional, reckless, and/or willful act by Defendant constitutes a violation of the Plaintiff's statutory rights under the DCFMLA.

78. By reason of Defendant's actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the DCFMLA, including his attorney's fees.

### Count IV. Retaliation under the DCFMLA

79. Plaintiff reincorporates by reference all the allegations above.

80. Under the DCFMLA it is illegal for the Defendant's to discharge or discriminate in any manner, against an individual for opposing any practice made unlawful under the Act.

81. In the present instance, the Plaintiff engaged in protected activity when he requested FMLA leave on 11/9/2016.

82. Defendant then retaliated against him for taking this leave, when they terminated him 24 hours later on 11/10/2016. Plaintiff learns of his termination for the first time on 11/28/2016.

83. Because of the close proximity of the adverse actions, it creates an inference of retaliation that would dissuade a reasonable employee from filing a claim.

84. This intentional, reckless, and/or willful act by the Defendant constitutes a violation of the Plaintiff's statutory rights under the DCFMLA.

85. By reason of Defendant's actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the DCFMLA, including his attorney's fees.

## Count V. Interference Under the FMLA

86. Plaintiff reincorporates by reference all the allegations above.

87. The Family Medical Leave Act (FMLA) provides an eligible employee for a total of twelve (12) workweeks of medical leave during any twelve (12) month period when the employee becomes unable to perform the functions of her job.

88. In order to prevail in his FMLA claim, Plaintiff must show that the employer "interfere[d] with, restrain[ed], or den[ied] the exercise of or the attempt to exercise, any right provided" by the FMLA, 29 U.S.C. § 2615(a)(1), and that he was prejudiced thereby. *See McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 391 U.S. App. D.C. 371, 377, 611 F.3d 1, 7 (2010) citing to *Ragsdale v. Wolverine Worldwide, Inc.*, 535 U.S. 81, 89 (2002); *see also Gordon v. United States Capitol Police*, 778 F.3d 158, 165 (2015) ("[W]e hold that an employer action with a

reasonable tendency to "interfere with, restrain, or deny" the "exercise of or attempt to exercise" an FMLA right may give rise to a valid interference claim under § 2615(a)(1) even where the action fails to actually prevent such exercise or attempt.")

89. The Plaintiff "can succeed on [his] claim under the FMLA without showing [Defendant] denied [him] any leave [he] requested. [He] need only show the employer "interfere[d] with … the exercise of" [his] FMLA rights, 29 U.S.C. § 2615(a)(1), and that [he] suffered "monetary losses … as a direct result of the violation [...]"" *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 391 U.S. App. D.C. 371, 377, 611 F.3d 1, 7 (2010) (emphasis added).

90. Plaintiff had had a serious health condition of anxiety and depression which made him unable to perform his job. He was also seeing a medical provider in 2016. Plaintiff provided his employer with notice to take leave on 11/9/2016 only for them to deny him this leave and terminate him 24 hours later on 11/10/2016. Plaintiff learns of this termination for the first time on 11/28/2016.

91. This intentional, reckless, and/or willful act by Defendant constitutes a violation of the Plaintiff's statutory rights under the FMLA.

92. By reason of Defendant's actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the FMLA, including his attorney's fees.

### Count VI. Retaliation under the FMLA

93. Plaintiff reincorporates by reference all the allegations above.

94. Under the FMLA it is illegal for the Defendant to discharge or discriminate in any manner, against an individual for opposing any practice made unlawful under the Act. *See* 29 U.S.C § 2615.

95. In the present instance, the Plaintiff engaged in protected activity when he requested FMLA leave on 11/9/2016.

96. Defendant then retaliated against him for taking this leave, when they terminated him 24 hours later on 11/10/2016. Plaintiff learns of his termination for the first time on 11/28/2016.

97. Because of the close proximity of the adverse actions, it creates an inference of retaliation that would dissuade a reasonable employee from filing a claim.

98. This intentional, reckless, and/or willful act by the Defendant constitutes a violation of the Plaintiff's statutory rights under the FMLA.

99. By reason of Defendant's actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the FMLA, including his attorney's fees.

### COUNT VII. Failure of Adequate Notice Under COBRA

100.    Plaintiff reincorporates by reference all the allegations above.

101.    "COBRA rights include the option to continue health insurance coverage equivalent to other qualified beneficiaries for at least eighteen (18) months, at a cost of no more than 102 percent of the premium; the beneficiary must elect coverage within sixty days after the qualifying event, and may not be required to make the first premium payment before forty-five days after election. 29 U.S.C. §§ 1162, 1165. The statute itself does not prescribe the contents of the required notice. *See* 29 U.S.C. § 1166(a)(4) (In the case of a qualifying event, "the administrator shall notify . . . any qualified beneficiary . . . of such beneficiary's rights under this [part]."). [. . .T]he notice given must be sufficient to allow the

qualified beneficiary to make an informed decision whether to elect coverage." *See*

*McDowell v. Krawchison*, 125 F.3d 954, 958 (6th Cir. 1997)

102.  Failure to provide adequate notice to the employee can result in a daily penalty of

$100 under 29 U.S.C. §1132.

103.  In the present instance, Plaintiff learned of his termination on November 28, 2016

from a letter sent by email on this day by the VP of HR. The termination letter is

dated November 10, 2016 and informs Plaintiff of his election of continued health

coverage under COBRA.

104.  Plaintiff did not receive his notice of election for medical insurance under

COBRA, until August 2017. During this time period from November 28, 2016 –

August 2017, Plaintiff and his spouse was without health insurance and to that end,

were unable to seek medical treatment, including in this case, Plaintiff's treatment

for anxiety and depression.

105.  Plaintiff thus requests that the Court fine the Defendant's $100 per day from

November 28, 2016 to August 2017 for failure to provide notice under COBRA.

106.  This intentional, reckless, and/or willful act by the part of Defendant constitutes a

violation of the Plaintiff's statutory rights under COBRA.

107:  By reason of Defendant's actions, the Plaintiff is entitled to all legal, liquidated

and equitable remedies under COBRA, including his attorney's fees.

**Count VIII. Failure to Pay Overtime Wages Under the DCWPCL**

108.  Plaintiff reincorporates by reference all the allegations above.

109.  Under the D.C. Wage Payment Collection Law, every employer shall pay all

wages earned to his employees at least twice during each calendar month, on regular

paydays designated in advance by the employer; provided, however, that an interval

of not more than 10 working days may elapse between the end of the pay period

covered and the regular payday designated by the employer.

110.   Under the D.C. Wage Payment Collection Law, § 32-1301 (3) wages are broadly

defined to include, monetary compensation owed "for labor or services rendered,

whether the amount is determined on a time, task, piece, commission or other basis

of calculation." It then goes on to define wages as bonus'; commissions; fringe

benefits; overtime premium; other remuneration promised or owed, pursuant to an

oral or written contact for employment; pursuant to a contract between an employer

and another person or entity; and pursuant to District of federal law.

111.   Defendant's violated the D.C. Wage Payment Collection Law when it withheld

overtime wages from the Plaintiff by failing to pay him in a timely manner. There is

also no bona fide dispute for the wages owed, when in here, the Plaintiff has earned

his overtime wages due to him, for work already performed for the Defendant.

112.   Due to Defendant's violations, the Plaintiff is entitled to his hourly compensation

and liquidated damages in treble the amount of unpaid wages, pursuant to D.C. Code

§ 32-1308(a), his attorney's fees and costs, and all other relief under the D.C Wage

Payment and Collection Law, D.C Code § 32-1301 *et seq.*

### Count IX. Breach of Contact for Unpaid Wages

113.   Plaintiff reincorporates by reference all the allegations above.

114.   Defendant's entered into a contract with the Plaintiff to pay him all his wages,

salary and benefits due.

115.   Despite this contract to pay, Defendant's have breached this contract by failing to

pay his overtime wages in 2016, for work performed also in 2016.

116.   By reasons of Defendant's breach, Plaintiff is entitled to all his damages, plus any

other relief this Court sees fit.

## Part VI. Prayer for Relief

WHEREFORE, the Plaintiff Elijah Brown respectfully requests this Court to award

damages in an amount to be proved at trial, and in addition:

A. Enter judgment for the Plaintiff Elijah Brown against the Defendant, United Planning Organization on all counts;

B. Declare that the conduct of the Defendant is in violation of the District and Federal Family Medical Leave Act (FMLA); the D.C. Human Rights Act (DCHRA); the D.C. Wage Payment and Collection Law (DCWPCL); and COBRA;

C. Declare also that Defendant breached their contract for wages with the Plaintiff;

C. Award Elijah Brown punitive and liquidated damages, full back pay and front pay, including salary, benefits, entitlements, loss of professional status and career-enhancing opportunities, bonuses', cash awards, loss of retirement savings and benefits and other remuneration and privileges of employment retroactive to the date of any unlawful employment action found to have occurred in this case;

D. Award Plaintiff pecuniary and out of pocket expenses;

E. Order Defendant to pay all reasonable attorney's fees, court costs, and expenses

incurred by Plaintiff as a result of Defendants' actions and inactions, as well as pre

judgment and post-judgment interest; and

F. Order such other equitable and legal relief as the Court deems appropriate.

1

## Part VII. Jury Trial Demanded.

2

Plaintiff demands a jury trial in this action against the Defendant.

3

4                                                    Respectfully Submitted,

5                                                    /s/A.J. Dhali
6                                                    Dhali PLLC
                                                     D.C. Bar No. 495909
7                                                    1828 L. Street, NW, Suite 600
8                                                    Washington D.C. 20036
                                                     T: (202) 556-1285
9                                                    F: (202) 351-0518
10                                                   Email: ajdhali@dhalilaw.com
                                                     Saturday November 25, 2017
11                                                   *Attorney for the Plaintiff Elijah Brown*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

ELIJAH BROWN,                          *

    Plaintiff,                      *

    v.                              *       Civil Action No. 2017 CA 007903B
                                               The Honorable Michael L. Rankin
UNITED PLANNING ORGANIZATION           *       Next Event: Initial Conference, 2/23/2018

    Defendant.                      *

*      *      *      *      *      *      *      *      *      *      *      *      *

## ANSWER

The Defendant United Planning Organization ("UPO"), though counsel, submits its Answer to the Complaint filed by Elijah Brown ("Brown") as follows:

## Introduction

The three unnumbered paragraphs of the Introduction section state legal conclusions concerning the claims raised by Brown for which no response is required. To the extent a response is required the factual allegations supporting the claims are denied.

## Part I. Parties

1.    Admit that Brown was an employee of UPO from September 2009. Deny that Brown was terminated on November 28, 2016. Admit that Brown was employed at the time of his termination as a Quality Control Inspector earning approximately $60,000 per year. The remainder of paragraph 1 states legal conclusions for which no response is required. To the extent a response is required the allegations are denied.

2.    Admit the first two sentences of paragraph 2. The remainder of paragraph 2 states legal conclusions for which no response is required. To the extent a response is required the allegations are denied.

1

## Part II. Exhaustion of Administrative Remedies

3.      Paragraph 3 states legal conclusions for which no response is required.  To the extent a response is required the allegations are denied.

4.      Paragraph 4 states legal conclusions for which no response is required. To the extent a response is required the allegations are denied.  Jurisdiction is proper in the United States District Court for the District of Columbia.

5.      Deny the allegation of "unpaid" wages.  The remaining allegations of paragraph 5 are admitted.

## Part IV. Statement of Facts

6.      Deny that Brown earned approximately $54,000 at the beginning of his employment with UPO.  The remaining allegations of paragraph 6 are admitted.

7.      Admit

8.      Admit that Brown never received any other formal "write up" from 2013 through September 2016.  The remaining allegations of paragraph 8 are denied.

9.      Admit.

10.      Admit that on October 1, 2016, Brown was given the title of Quality Control Inspector and that at the time he was earning approximately $60,000 per year.  The remaining allegations of paragraph 10 are denied.

11.      Admit that on Friday October 21, 2016, Brown was presented with a Performance Improvement Plan (PIP) by Valarie Hunt, Interim Director and Dianna Guinyard, VP/Chief Operating Officer.  The remaining allegations of paragraph 11 are denied.

12.      Admit that the language of the PIP speaks for itself and that Plaintiff's allegations to the contrary of the express language of the PIP in paragraph 12 are denied.

13.     Admit that the language of the PIP speaks for itself and that Plaintiff's allegations to the contrary of the express language of the PIP in paragraph 13 are denied.

14.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 14, therefore, such allegations are denied.

15.     Deny.

16.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 16, therefore, such allegations are denied.

17.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 17, therefore, such allegations are denied.

18.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 18, therefore, such allegations are denied.

19.     Admit the second sentence of paragraph 19.  UPO lacks knowledge or information sufficient to either admit or deny the remaining allegations in paragraph 19, therefore, such allegations are denied.

20.     Admit.

21.     Admit Pinkney sent the e-mail acknowledging receipt of Brown's e-mail.  The remaining allegations of paragraph 21 are denied.

22.     Deny.

23.     Deny the first sentence of paragraph 23.  Admit that UPO did not "send Brown his request to complete an FMLA application."

24.     Admit.

25.     Admit.

26.     Admit.

3

27.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 27, therefore, such allegations are denied.

28.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 28, therefore, such allegations are denied.

29.     Admit.

30.     Deny.

31.     Admit.

32.     Deny.

33.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 33, therefore, such allegations are denied.

34.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 34, therefore, such allegations are denied.

35.     Admit.

36.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 36, therefore, such allegations are denied.

37.     Deny.

38.     Admit that on November 28, 2016, Pinkney advised Brown about his termination effective November 10, 2016, and that the termination letter was dated November 10, 2016. UPO lacks knowledge or information sufficient to either admit or deny the remaining allegations in paragraph 18, therefore, such allegations are denied.

39.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 39, therefore, such allegations are denied.

40.     Deny.

**COBRA Claims**

41.     Deny that Brown was terminated on November 28, 2016.  Admit that at the time of his termination he was an eligible employee for UPO sponsored health insurance.

42.     Admit.

43.     Deny the first sentence of paragraph 43.  UPO lacks knowledge or information sufficient to either admit or deny the remaining allegations in paragraph 43, therefore, such allegations are denied.

44.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 44, therefore, such allegations are denied.

45.     Admit.

46.     Admit.

47.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 47, therefore, such allegations are denied.

48.     UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 48, therefore, such allegations are denied.

**DCWPCL & Breach of Contract Wage Claims**

49.     Admit that Brown was paid for the overtime worked during 2009 - 2015.  The remaining allegations of paragraph 49 are denied.

50.     Deny.

**Part V. Causes of Action**
**Count I. Disability Discrimination under the DCHRA**

51.     UPO repeats and reasserts each and every response contained in the preceding paragraphs as if fully set forth herein.

52.    Paragraph 52 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

53.    Paragraph 53 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

54.    Paragraph 54 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

55.    Paragraph 55 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

56.    Admit that Brown makes the allegations, but deny the specific factual allegations of paragraph 56.

57.    Deny.

58.    Deny.

59.    Deny.

60.    Deny.

61.    Deny.

### Count II. Retaliation under the DCHRA

62.    UPO repeats and reasserts each and every response contained in the preceding paragraphs as if fully set forth herein.

63.    Paragraph 63 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

64.    Paragraph 64 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

65.    Paragraph 65 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

66.    Deny the first sentence of paragraph 66.  UPO lacks knowledge or information sufficient to either admit or deny the remaining allegations in paragraph 66, therefore, such allegations are denied.

67.    Deny.

68.    Deny.

69.    Deny.

70.    Deny.

71.    Deny.

## Count III. Interference Under the DCFMLA

72.    UPO repeats and reasserts each and every response contained in the preceding paragraphs as if fully set forth herein.

73.    Paragraph 73 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

74.    Paragraph 74 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

75.    Paragraph 75 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

76.    Admit that Brown provided notice to take leave on 11/9/2016.  UPO lacks knowledge or information sufficient to either admit or deny the remaining allegations in paragraph 76, therefore, such allegations are denied.

77.    Deny.

78.      Deny.

## Count IV. Retaliation under the DCFMLA

79.      UPO repeats and reasserts each and every response contained in the preceding paragraphs as if fully set forth herein.

80.      Paragraph 80 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

81.      Deny.

82.      Deny UPO retaliated against Brown. Admit that UPO terminated Brown effective 11/10/2016.  UPO lacks knowledge or information sufficient to either admit or deny the remaining allegations in paragraph 82, therefore, such allegations are denied.

83.      Deny.

84.      Deny.

85.      Deny.

## Count V. Interference Under the FMLA

86.      UPO repeats and reasserts each and every response contained in the preceding paragraphs as if fully set forth herein.

87.      Paragraph 87 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

88.      Paragraph 88 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

89.      Paragraph 89 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

90.     Admit that Brown provided UPO with notice to take leave on 11/9/2016.  UPO lacks knowledge or information sufficient to either admit or deny the remaining allegations in paragraph 90, therefore, such allegations are denied.

91.     Deny.

92.     Deny.

## Count VI. Retaliation under the FMLA

93.     UPO repeats and reasserts each and every response contained in the preceding paragraphs as if fully set forth herein.

94.     Paragraph 94 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

95.     Deny.

96.     Deny UPO retaliated against Brown. Admit that UPO terminated Brown effective 11/10/2016.  UPO lacks knowledge or information sufficient to either admit or deny the remaining allegations in paragraph 96, therefore, such allegations are denied.

97.     Deny.

98.     Deny.

99.     Deny.

## Count VII. Failure of Adequate Notice Under COBRA

100.    UPO repeats and reasserts each and every response contained in the preceding paragraphs as if fully set forth herein.

101.    Paragraph 101 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

102.    Paragraph 102 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

103.    Admit that Brown's termination letter is dated November 10, 2016 and informs Brown of his election of continued health coverage under COBRA.  UPO lacks knowledge or information sufficient to either admit or deny the remaining allegations in paragraph 103, therefore, such allegations are denied.

104.    Deny the first sentence of paragraph 104.  UPO lacks knowledge or information sufficient to either admit or deny the allegations in paragraph 104, therefore, such allegations are denied.

105.    Deny that Brown is entitled to receive the relief requested.

106.    Deny.

107.    Deny.

### Count VIII. Failure to Pay Overtime Wages Under the DCWPCL

108.    UPO repeats and reasserts each and every response contained in the preceding paragraphs as if fully set forth herein.

109.    Paragraph 109 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

110.    Paragraph 110 states legal conclusions for which no response is required.  To the extent a response is required the factual allegations underlying the claim are denied.

111.    Deny.

112.    Deny.

### Count IX. Breach of Contact (sic) for Unpaid Wages

113.   UPO repeats and reasserts each and every response contained in the preceding paragraphs as if fully set forth herein.

114.   Deny.

115.   Deny.

116.   Deny.

### Part VI. (sic) Prayer for Relief

WHEREFORE, UPO denies that Brown is entitled to any relief whatsoever.  UPO respectfully requests that the Court enter judgment in its favor and award UPO.

### AFFIRMATIVE DEFENSES

### Count I. Disability Discrimination under the DCHRA

1.   Count I is barred by the applicable statute of limitations.

2.   UPO terminated Brown for neutral, non-discriminatory reasons.

3.   UPO acted in good faith and in a manner consistent with business necessity, and with the belief that it was not violating any law.

4.   The individuals who made the decision to terminate Brown's employment were not aware of his alleged disability.

### Count II. Retaliation under the DCHRA

5.   Count II is barred by the applicable statute of limitations.

6.   UPO terminated Brown for neutral, non-discriminatory reasons.

7.   UPO acted in good faith and in a manner consistent with business necessity, and with the belief that it was not violating any law.

8.   The individuals who made the decision to terminate Brown's employment were not aware of his alleged protected activity at the time of the decision.

9.    The decision to terminate Brown was made before his alleged protected activity.

## Count III. Interference Under the DCFMLA

10.    UPO terminated Brown for neutral, non-discriminatory reasons.

11.    UPO acted in good faith and in a manner consistent with business necessity, and with the belief that it was not violating any law.

12.    The individuals who made the decision to terminate Brown's employment were not aware of his alleged protected activity at the time of the decision.

13.    The decision to terminate Brown was made before he requested leave under the DCFMLA.

## Count IV. Retaliation under the DCFMLA

14.    UPO terminated Brown for neutral, non-discriminatory reasons.

15.    UPO acted in good faith and in a manner consistent with business necessity, and with the belief that it was not violating any law.

16.    The individuals who made the decision to terminate Brown's employment were not aware of his alleged protected activity.

17.    The decision to terminate Brown was made before he requested leave under the DCFMLA.

## Count V. Interference Under the FMLA

18.    UPO terminated Brown for neutral, non-discriminatory reasons.

19.    UPO acted in good faith and in a manner consistent with business necessity, and with the belief that it was not violating any law.

20.    The individuals who made the decision to terminate Brown's employment were not aware of his alleged protected activity at the time of the decision.

12

21.     The decision to terminate Brown was made before he requested leave under the FMLA.

### Count VI. Retaliation under the FMLA

22.     UPO terminated Brown for neutral, non-discriminatory reasons.

23.     UPO acted in good faith and in a manner consistent with business necessity, and with the belief that it was not violating any law.

24.     The individuals who made the decision to terminate Brown's employment were not aware of his alleged protected activity.

25.     The decision to terminate Brown was made before he requested leave under the FMLA.

### Count VII. Failure of Adequate Notice Under COBRA

26.     UPO is not the plan administrator.

27.     UPO acted in good faith with regard to providing notice of COBRA rights to Brown.

28.     Brown timely received sufficient notice of his rights under COBRA.

29.     The claim is barred by laches based upon Brown's failure to act upon receiving notice of rights in the November 10, 2016, letter.

30.     The claim is barred by Brown's waiver by failing to elect COBRA coverage after receiving additional information in August 2017.

31.     In the alternative, Brown is not entitled to COBRA coverage based upon his termination for gross misconduct.

### Count IX. Breach of Contact (sic) for Unpaid Wages

32.     Count IX fails to state a claim upon which relief can be granted.

13

Respectfully submitted,


*/s/ Andrew J. Chiang*
Andrew J. Chiang (Bar No. 1003876)
O'HAGAN MEYER, PLLC
2560 Huntington Avenue, Suite 204
Alexandria, VA 22303
(703) 775-8602
achiang@ohaganmeyer.com

*Counsel for Defendant*


## JURY DEMAND

UPO demands a trial by jury on all matters so triable.

*/s/ Andrew J. Chiang*
Andrew J. Chiang

14

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of January 2018, a copy of the foregoing

*Answer* was served upon the following via CaseFileXpress:

A.J. Dhali
Dhali PLLC
1828 L. Street, NW, Suite 600
Washington, DC 20036

*Counsel for Plaintiff*

/s/ Andrew J. Chiang
Andrew J. Chiang